(November 10, 1916.)

KATIE SHANER, as Executrix of the Estate of JOSEPH SHANER, Deceased, and KATIE SHANER in Her Own Individual Capacity, Appellant, v. RATHDRUM STATE BANK, a Corporation, Respondent.

[161 Pac. 90.]

DEED—ABSOLUTE ON FACE—WHEN A MORTGAGE—INTENTION OF PARTIES —CONDITIONAL SALE—CONTRACT TO RECONVEY—CANCELATION OF DEBT—TRANSFER OF MORTGAGED PROPERTY—EVIDENCE.

1. S. and wife on June 6, 1912, borrowed $8,800 of a bank and on the same day executed a promissory note and a mortgage to secure the payment of said debt. Default was made in payment of interest, taxes and insurance, and the debt became due and the bank demanded payment on October 29, 1914, and S. and wife were unable to pay, and at that time there was found to be due $10,879, and a contract was entered into between the parties whereby S. and wife were to sell the property to the bank, and they executed a warranty deed conveying the mortgaged property to the bank in ex-

tinguishment of the debt; and at the same time a separate agreement was entered into between the parties, giving the mortgagors the right to repurchase said property within a year from said date, and the promissory note was canceled and surrendered to S. *Held,* that the transaction was a purchase and sale of said property and not a mortgage to secure the payment of said debt.

2.   *Held,* that the borrowing of said money and the execution of said mortgage and the subsequent contract of sale made over two years thereafter were two separate and distinct transactions.

3.   *Held,* that the evidence sustains the findings and judgment of the court.

4.   *Held,* under the evidence, that the value of the property conveyed was a little more than the amount of the debt at the time the deed was executed, but not sufficient difference to indicate that there was any fraud or over-reaching in the transaction, and no fraud or undue influence is charged in the complaint.

5.   It is a well-settled rule that where one asserts that a deed, absolute on its face, with a conditional contract to repurchase within a certain date, is simply a mortgage given as security for the payment of a debt, he must show by clear and convincing evidence that it was intended as a mortgage and not as a sale.

6.   A payment of a mortgage indebtedness may be made by the transfer to the mortgagee by the mortgagor of the mortgaged premises.

7.   A deed absolute on its face cannot be held to be a mortgage unless there is a debt to be secured thereby, since a mortgage is a defeasible conveyance made simply to secure a debt; and where there in no continuing debt, the agreement to reconvey the property within a certain period of time, provided certain payments are made, does not make the conveyance a mortgage.

8.   The evidence to support the claim that a deed, absolute on its face, is a mortgage, must be clear and satisfactory, and show the intent of the parties to be that such deed is security for a debt and not a conveyance of absolute title.

9.   Where it is claimed that a deed, absolute on its face, is a mortgage, the claimant ought not to recover without tendering the amount of the debt.

10.   *Held,* that the evidence is sufficient to support the findings and decree.

[As to deed absolute with agreement to reconvey, see note in 17 Am. Dec. 300.]

APPEAL from the District Court of the Eighth Judicial District for Kootenai County.   Hon. R. N. Dunn, Judge.

Action to have a deed, absolute on its face, declared a mortgage. Judgment for the defendant. *Affirmed.*

C. L. Heitman, for Appellant.

There was a pre-existing antecedent debt, evidenced by the promissory note and mortgage. The transaction therefore amounts to a mortgage, whatever language the parties may have used and whatever stipulation they may have inserted in the instrument. (3 Pomeroy's Eq. Jur., 3d ed., sec. 1195, and cases cited; *Keithley v. Wood,* 151 Ill. 566, 42 Am. St. 265, 38 N. E. 149; *Hickox v. Lowe,* 10 Cal. 197; *Robertson v. Wheeler,* 162 Ill. 566, 44 N. E. 60; *Kelleran v. Brown,* 4 Mass. 443; *Colwell v. Woods,* 3 Watts, 188, 27 Am. Dec. 345; *Phillips v. Hulsizer,* 20 N. J. Eq. 308, 315.)

The fact that the grantor, Shaner, was left in possession of all of the property and that his estate still holds possession of the same is important, and throws much light upon the real intent and nature of the transaction, as tending to show the existence of a debt and the whole character of the instrument as constituting a mortgage. (3 Pomeroy's Eq. Jur., sec. 1195, and cases cited; *Kelly v. Leachman* (2 Ida. 1112), 3 Ida. 392, 129 Pac. 849; *Worley v. Carter,* 30 Okl. 642, 121 Pac. 672.)

"While the debt assumed a new form, when all the evidence and circumstances are considered, we do not think it was paid and discharged, but, on the other hand, it was enlarged by appellant advancing an additional sum." (*Smith v. Hoff,* 23 N. D. 37, Ann. Cas. 1914C, 1072, 135 N. W. 772; *Gray v. Shelby,* 83 Tex. 405, 18 S. W. 809.)

The embarrassed financial condition of Shaner, his inability to pay interest, taxes and insurance, and the threat of foreclosure, are all circumstances favorable to appellant's contention that the transaction constituted a mortgage. (*Reed v. Reed,* 75 Me. 264; *Villa v. Rodriguez,* 12 Wall. 339, 20 L. ed. 406.)

"A deed absolute on its face, and a separate agreement by the grantee for reconveyance of the same tract of land to the grantor upon payment of the consideration named in the deed,

with interest, taxes, etc., by a specified time, bearing the same date as the deed, constitute a mortgage." (*Smith v. Hoff, supra; Kelly v. Leachman, supra.*)

Ezra R. Whitla, for Respondent.

"Where a deed absolute in form is executed with or without a contemporaneous agreement for a resale of the property, in the absence of anything on the face of the collateral papers to show a contrary intent, the presumption of law, independent of evidence, is that the transaction is what it appears to be, and he who asserts that the writing shall be given a different construction must show, by clear and convincing evidence, that a mortgage, and not a sale with the right to repurchase, was intended." (*Johnson v. National Bank of Commerce,* 65 Wash. 261, 118 Pac. 21, L. R. A. 1916B, 4; *Miller v. Smith,* 20 N. D. 96, 126 N. W. 499; Pomeroy, Eq. Jur., 3d ed., par. 1196; *Harmon v. Grants Pass Banking & Trust Co.,* 60 Or. 69, 118 Pac. 188; *Bogk v. Gassert,* 149 U. S. 17, 13 Sup. Ct. 738, 37 L. ed. 634.)

Payment of an indebtedness may be made by the transfer to the mortgagee of the mortgaged premises and the acceptance thereof by him.   (27 Cyc. 1390.)

Cancelation and satisfaction of the note cancels and satisfies the mortgage.   (*Harmon v. Grants Pass Banking & Trust Co., supra; Brown v. Thomas,* 37 Kan. 282, 15 Pac. 211.)

"The test is the existence or nonexistence of a debt.   If after the transaction no debt remains, there is no mortgage, but only a conditional sale." (*McNamara v. Culver,* 22 Kan. 661; *Saxton v. Hitchcock,* 47 Barb. 227; *Hays v. Emerson,* 75 Ark. 551, 87 S. W. 1027; *Vance v. Anderson,* 113 Cal. 532, 45 Pac. 816; *Woods v. Jansen,* 130 Cal. 200, 62 Pac. 473; *Felland v. Vollmer Milling etc. Co.,* 6 Ida. 120, 53 Pac. 268.)

"Before a deed can be declared to be an equitable mortgage there must exist a debt which must be personal in its nature and enforceable against the person independent of the security." (*Fabrique v. Cherokee & P. Coal & Mining Co.,* 69 Kan. 733, 77 Pac. 584; *Rushton v. McIllvene,* 88 Ark. 299, 114 S. W. 709; *Miller v. Smith,* 20 N. D. 96, 126 N. W. 499;

*Bradbury v. Davenport,* 120 Cal. 152, 52 Pac. 301; *Vance v. Anderson,* 113 Cal. 532, 45 Pac. 814.)

"In an action for the purpose of declaring a deed a mortgage, the evidence to support the claim of the plaintiff must be clear and satisfactory and show the intent of the parties to be that the instrument delivered is security for a debt, and not a conveyance of absolute title." (*Bergen v. Johnson,* 21 Ida. 619, 123 Pac. 484; *Jasper v. Hazen,* 4 N. D. 1, 58 N. W. 454, 23 L. R. A. 58.)

In attempting to have a deed declared a mortgage, equity requires the party so asking to tender and offer to pay the amount of the debt and interest before he is entitled to any standing in a court of equity. (*Hicks v. Hicks* (Tex. Civ.), 26 S. W. 227; *Dawson v. Overmyer,* 141 Ind. 438, 40 N. E. 1065; *Rodriguez v. Haynes,* 76 Tex. 225, 13 S. W. 296; Jones on Mortgages, 2d ed., par. 1095.)

SULLIVAN, C. J.—This action was brought to have a warranty deed, conveying certain real estate, executed by Joseph Shaner and wife to the Rathdrum State Bank, declared a mortgage, and a contract for the reconveyance of the land described in the deed by the bank to Shaner and wife declared void and of no force and effect.

Upon the issues made by the pleadings the cause was tried by the court without a jury and the court made findings and entered judgment in favor of the respondent bank, whereby it was held that said warranty deed was not a mortgage but a deed in fact, and that said contract to reconvey the real estate involved was a valid contract.

This appeal is from the judgment.

The insufficiency of the evidence to sustain the findings and judgment is the principal error assigned. The following facts appear from the record:

Joseph Shaner on June 6, 1912, borrowed $8,800 from the respondent bank and he and his wife, Katie Shaner, the plaintiff and appellant in this action, executed their promissory note for said amount. Said note bore interest at the rate of

10% per annum from date, interest payable semi-annually. The principal was made payable on June 6, 1915. On that date, to secure the payment of said note, Joseph Shaner and the appellant herein executed a certain mortgage upon real estate. Said mortgage provided, among other things, that in case of default in payment of said note and interest, or any part thereof, or any payment of any disbursements authorized by said mortgage, the holder thereof might at once proceed to foreclose said mortgage for the amount due and that said note, at the election of the holder, should become due and payable without notice. Shaner failed and was unable to pay the interest or taxes on the property mortgaged, as he had agreed to do, and the debt became due and payable according to the terms of the mortgage and the property was rapidly depreciating in value. Thereupon the respondent bank demanded of the Shaners that they pay the mortgage debt, which they refused to do. At the time the bank demanded payment the interest had accumulated and the bank had been compelled to pay taxes and insurance on said property. At the time this demand was made, the indebtedness had increased from $8,800 to $11,297.23, less some small credits or payments that had been made, after deducting which there remained a balance due of $10,879, and thereupon Shaner and his wife offered to deed the property included in said mortgage to the bank in payment of said debt. It was the agreement at that time that the bank would enter into a contract with Shaner, giving him the right to repurchase said property within one year from the date of the deed. This option, no doubt, was intended to allow Shaner all of the advantages which he would have obtained had the mortgage been foreclosed, under his right to redeem within one year after the foreclosure, and also save him the additional cost of a foreclosure of the mortgage and attorneys' fees, which cost and fees would no doubt have amounted to more than a thousand dollars. Subsequent to the execution of said deed, Joseph Shaner died and the plaintiff became the executrix of his estate.

We think the evidence clearly shows that the value of the property mortgaged had considerably decreased from the time of the execution of the mortgage until the deed was executed.

It is alleged in the complaint that the mortgage executed on June 6, 1912, and the deed and contract executed on October 29, 1914, constitute one and the same transaction.

There is nothing in the record to sustain this contention. Here were two separate and distinct transactions, one occurring two years after the other. The first one was to borrow and secure the payment of money; the second was for the purpose of discharging or paying the debt. The court found, and the finding is fully sustained by the evidence, that the total balance due defendant bank for advances, interest, taxes and principal in said matter was the sum of $10,879, and that for said sum the said Joseph Shaner and Katie Shaner, his wife, made and executed and delivered to the defendant a warranty deed for said premises; that at the time said warranty deed was so delivered, the indebtedness due from said Joseph Shaner to the Rathdrum State Bank, evidenced by said promissory note, was canceled and paid and said promissory note returned to the said Joseph Shaner; that at that time said defendant made and delivered to Joseph Shaner an optional contract to purchase, whereby he might purchase said property within one year from the date thereof, by the payment to the defendant of the sum of $10,879, together with taxes upon said property and interest upon said sum and insurance premiums upon the buildings situated upon said premises; that said Shaner and plaintiff failed to pay said sum and that said contract became forfeited, annulled and terminated, and that the plaintiff has no interest whatever in or to said premises.

We think these findings are fully sustained by the evidence.

It is not claimed that there was any fraud in this transaction, but it is claimed that the price paid for said property was far below its actual value at the time the deed was executed. However, we do not think, after a careful examination of the evidence, that there is anything in this contention, since the competent evidence in the case shows that the value

of the property was but little more than the amount of the debt at the time the deed was given.

It also appears that after this action was brought, the defendant bank made a written tender and offer to the plaintiff to deed to her the property in controversy if she would pay the amount called for by said contract. This offer was not accepted.

It is disclosed by the record that the Rathdrum State Bank was about to foreclose said mortgage and that Shaner desired to save the cost of foreclosure and to have matters put in such condition that if he had the opportunity to sell the property he could do so, which he thought he could better do than if a foreclosure action was pending. The officers of the bank concluded at the date of the loan that the property involved was worth about $16,000, and the evidence shows that the value of the property had decreased considerably at the time of the execution of said deed. A part of the property was a large frame building in the town of Rathdrum, known as the Mountain View Hotel, which had been vacant for sometime. It also appears that much of the acreage property had decreased in value in the two years.

In regard to the sale of the property in satisfaction of said debt, the cashier of the bank testified that Shaner preferred to transfer said property to the bank and then have the bank give him a certain time or option in which to purchase back the property, and thus save the expense of a foreclosure, and he also wanted to keep the property out of the courts, "because he figured that during the time it was in court he would have a very poor show to sell any of the property" in case a foreclosure suit was brought.

It is a well-settled rule of law that where one asserts that a deed shall be given a different construction from that clearly appearing on its face, claiming that it is a mortgage, he must show by clear and convincing evidence that a mortgage, and not a sale with the right to repurchase, was intended. (*Johnson v. National Bank of Commerce,* 65 Wash. 261, 118 Pac. 21.)

There is no allegation in the complaint of undue influence or fraud in the transaction, and the complaint is drawn upon the theory of the intention of the parties. The evidence is conclusive that the indebtedness due from Shaner to the bank was upon a promissory note, and that the mortgage was a mere incident to the note, security for its payment. At the time said deed was executed, the promissory note was canceled and delivered to Shaner, thus canceling the debt. The deed was not given as security for a debt that had been canceled, but in satisfaction of the debt represented by the promissory note.

It is a well-established rule of law that payment of an indebtedness may be made by the transfer to the mortgagee of the mortgaged premises. (27 Cyc. 1390.) The promissory note having been canceled and delivered to the maker, there certainly was no debt existing which was enforceable against Shaner.

. It was held in *Fabrique v. Cherokee & P. C. M. Co.*, 69 Kan. 733, 77 Pac. 584, that a deed cannot be held to be a mortgage unless there is a debt to secure, as a mortgage is a defeasible conveyance, simply made to secure the debt, and where there is no continuing debt, the agreement to reconvey does not make the conveyance a mortgage.

In *McNamara v. Culver*, 22 Kan. 661, where the question as to whether a certain deed was a mortgage or not was before the court, Mr. Justice Brewer, in delivering the opinion, said:

"Now that a deed and an agreement to reconvey, though separate instruments, may operate as simply a mortgage, is clear, and that they do not necessarily create one is equally clear. The test is the existence or nonexistence of a debt. And equity looks behind the form to the fact. If the transaction was intended as a loan, if there remains a debt for which the conveyance is only a security, and the collection of which may be enforced independent of the security, equity will hold it a mortgage, no matter whether the transaction is evidenced by one or two instruments. But if there be no debt, there can be no security—no mortgage."

A mortgage is an incident of the debt, and without a debt, obligation or liability there is nothing to secure, consequently there can be no mortgage.

We know of no reason why a mortgagee should not, by contract subsequent to the execution of a mortgage, purchase from the mortgagor the equity of redemption or obtain a release of the right of redemption, provided it is fairly done and for an adequate consideration. Circumstances may be such as to render such a sale mutually beneficial and entirely optional on the part of the mortgagor, uninfluenced by the relation of the parties, and to convert such an instrument into a mortgage, there must be a continuing, binding debt in its fullest sense. (See *Miller v. Smith,* 20 N. D. 96, 126 N. W. 499, and authorities there cited.)

Under the law there can be no question that a party can make a purchase of lands, either in satisfaction of a precedent debt or for a consideration then paid, and may at the same time contract to reconvey the land upon the payment of a certain sum, without any intention on the part of either party that the transaction should be in effect a mortgage. There is no absolute rule that the covenant to reconvey shall be regarded, either in law or in equity, as a defeasance.

Under the law the mortgagor has the same capacity to contract with reference to his interests in the mortgaged premises that he has with reference to other property.

This court held in *Bergen v. Johnson,* 21 Ida. 619, 123 Pac. 484, that "In an action for the purpose of declaring a deed a mortgage, the evidence to support the claim of the plaintiff must be clear and satisfactory, and show the intent of the parties to be that the instrument delivered is security for a debt, and not a conveyance of absolute title."

It was aptly said in the case of *Johnson v. National Bank of Commerce,* 65 Wash. 261, 118 Pac. 21, by the supreme court of Washington:

"We think the purpose was on the part of the bank to avoid a foreclosure, and on the part of Johnson to avoid a deficiency judgment. Courts should encourage rather than condemn such settlements when fairly and understandingly

entered into. . . . . If the property had depreciated in value, and the appellant had sought to treat the transaction as a mortgage, no court would have decreed a foreclosure. The evidence would have forbidden such a course.''

It is held by many courts that where it is attempted to have a deed declared a mortgage, that equity requires the party so asking to tender an offer to pay the amount of the debt and interest before he is entitled to any standing in a court of equity.

It was held in *Hicks v. Hicks* (Tex. Civ.), 26 S. W. 227, that ''A plaintiff claiming that a deed to defendant's ancestor, absolute on its face, is a mortgage, cannot recover the land without tendering the amount of debt and interest.''

Jones on Mortgages, 7th ed., sec. 1095, referring to the question here involved, says: ''In like manner tender of the debt should be made in a bill to have an absolute deed declared a mortgage.''

The evidence in this case discloses the fact that the debt for which it is claimed that the property in question was given as security has been paid and satisfied in full, and that there is no personal debt existing against Joseph Shaner or his estate which could be enforced independent of the security. The record clearly shows that the intent of the parties at the time said deed was executed was that it was given in full satisfaction of the debt due the bank, and that there was no intention whatever that said deed was given as security for the payment of said debt.

The judgment, therefore, must be affirmed, and it is so ordered. Costs in favor of respondent.

Budge and Morgan, JJ., concur.