(October 22, 1924.)

CHARLES WOODMANSEE ESTATE, a Corporation, Appellant, v. W. H. COVINGTON and FIRST NATIONAL BANK OF REXBURG, a Corporation, Respondents.

[230 Pac. 41.]

STATE LAND—CERTIFICATE OF SALE—ASSIGNMENT AS SECURITY—MORTGAGE—SUBSEQUENT ISSUANCE OF PATENT TO MORTGAGEE.

1.   Parol evidence is admissible to show that an assignment of a certificate of sale of state land is a mortgage.

2.   Where certificates of sale of state lands are assigned as security for the payment of a debt, the transaction is a mortgage and continues to be so although patents are later taken in the name of the mortgagee.

APPEAL from the District Court of the Ninth Judicial District, for Madison County.    Hon. Geo. W. Edgington, Judge.

Action to recover a crop of wheat or the value thereof. Judgment for defendant and intervenor.    *Affirmed.*

N. J. Harris and Miller & Ricks for Appellant, cite no authorities on points decided.

Publisher's Note.
1.   Parol evidence to add to or vary a writing, see note in 56 Am. St. 659.

O. P. Soule and C. W. Poole, for Respondents.

The assignment of land sale certificates to secure the payment of a debt is deemed to be a mortgage of the interest of the assignor in the lands affected thereby, and the taking of patents by the assignee does not change the relationship of the parties. (C. S., secs. 6348, 6349, 6352, 6355, 6358; *Kelley v. Leachman,* 3 Ida. 392, 29 Pac. 849; *Wilson v. Thompson,* 4 Ida. 678, 43 Pac. 557; *Brown v. Bryan,* 6 Ida. 1, 51 Pac. 995; *Thompson v. Burns,* 15 Ida. 572, 99 Pac. 111; *Hannah v. Vensel,* 19 Ida. 796, 116 Pac. 115; 27 Cyc. 991.)

McCARTHY, C. J.—This action was brought by appellant against respondent Covington to obtain possession of one-half the crop of wheat grown in 1922 upon 320 acres of land in Madison county, Idaho. Respondent First National Bank of Rexburg, a corporation, intervened, claiming right to possession of the one-half the crop in controversy. Appellant claimed ownership of the land in question and, on March 23, 1922, leased it to respondent Covington, the crop to be divided between them half and half. Respondent First National Bank of Rexburg claimed to own the land by virtue of a sheriff's deed of date April 26, 1922, and leased it to respondent Covington on April 26, 1922, on the same terms that appellant had previously leased it to him. Up to the time of this second lease Covington had done nothing in regard to going into possession of the premises except to haul some seed grain and water to the place. By way of defense respondent Covington denied that appellant was the owner of the land and set up that it merely held a mortgage on it. He further defended on the ground that the transactions by which appellant acquired its alleged interest in the land and leased it to him constituted doing business within this state; that appellant was a foreign corporation which had not complied with the laws of this state in regard to such corporations, and that therefore such transactions were void. In its complaint in inter-

vention the First National Bank of Rexburg set up that it was the owner of the premises and duly and regularly leased them to respondent Covington, all of which was denied by appellant in its answer to the complaint in intervention. For convenience sake Covington will hereinafter be .designated as respondent, and the First National Bank of Rexburg as intervenor. The case was tried to the court without a jury. A receiver was appointed who took possession of the crop in controversy. The court found that appellant was not the owner nor entitled to the possession of any part of the crop in question, that it merely held a mortgage on the land which had not been foreclosed. It further found that appellant was a foreign corporation which had not complied with the laws of this state in regard to such corporations; that the transactions by which it acquired an interest in the land and attempted to lease it to respondent were therefore void. It further found that intervenor was the owner of the land, and entitled to the possession of the one-half the crop in question. It accordingly entered judgment that respondent and intervenor each have immediate possession of one-half the crop in question, or its value if possession could not be delivered. From this judgment the appeal is taken. There are many assignments of error, but, for reasons which hereinafter appear, the only ones which need be considered are that the court erred in holding appellant had only a mortgage on the land and was not entitled to possession of it or to a share of the crop, and therefore erred in entering judgment for respondent and intervenor.

The uncontradicted evidence shows that appellant corporation was formed by the heirs of Chas. Woodmansee to look after the affairs of, and transact business pertaining to, his estate. One of the heirs, James Woodmansee, who was conducting farming operations in Madison county, Idaho, had been unsuccessful, and had incurred considerable indebtedness which he was unable to pay. At the suggestion of his mother, who was the principal stockholder, appellant corporation decided to pay these debts of James Woodmansee and secure the repayment thereof by a mortgage upon his

property. He had contracted to buy certain state lands from the state of Idaho and had received certificates of sale. On July 23, 1918, appellant took a note from James A. Woodmansee and his wife for $9,478.64, representing the amount that had been paid on his debts. Appellant at that time took as security a mortgage upon real estate owned by Woodmansee in Madison county, Idaho, and an assignment of the certificates of sale to the state land. The mortgage secured the payment of the principal sum of the note and also the payment of such further sums of money as appellant might advance to Woodmansee at any time during the continuance of the mortgage. On Feb. 10, 1923, the balance which appellant claimed to be owing to it by Woodmansee was $18,018.40. Subsequent to the assignment of the certificates of sale, appellant paid to the state of Idaho the unpaid instalments on the contract of sale, and received a patent from the state. It was upon these state lands that the crop in controversy was raised. Appellant also paid taxes on this land after the patents were issued. However, it appears that the amounts so paid to the state and for taxes were included in the James W. Woodmansee account and charged against him by the appellant. The above evidence fully sustains the finding of the court that the transaction by which appellant acquired the assignment of the certificates of sale was a mortgage. There is no evidence to the contrary. The transaction being a mortgage in its inception, the taking of the patents in the name of appellant would not change its nature. It continued throughout to be a mortgage. (*Thompson v. Burns,* 15 Ida. 572, 99 Pac. 111; *Kelley v. Leachman,* 3 Ida. 392, 29 Pac. 849; *Wilson v. Thompson,* 4 Ida. 678, 43 Pac. 557; *Brown v. Bryan,* 6 Ida. 1, 51 Pac. 995; *Hannah v. Vensel,* 19 Ida. 796, 116 Pac. 115.) This mortgage was never foreclosed. Appellant did not acquire title to the land nor the crops, and had no right to the possession of the land or crops or to lease the land. (C. S., sec. 6952.)

Appellant contends, however, that respondent Covington, being its tenant, was estopped to deny its title or right of

possession to the land.   Be that as it may, it certainly cannot be contended that the intervenor was estopped to deny the title or right of possession of appellant, and it had a right to intervene and set up its right to possession of one-half of the crop.   Both appellant and intervenor conceded that respondent was entitled to one-half the crop, and they were litigating as between themselves the right to the possession of the other one-half.   Appellant being merely a mortgagee had no right to the possession of the crop.   On the other hand, intervenor, having acquired the title by sheriff's deed, its lease to respondent was valid, and gave it a right to the one-half the crop which was in controversy.   Therefore the findings of the court on this issue support the judgment which was entered.

Appellant also contends that the lease from intervenor to respondent was void because in violation of U. S. R. S., sec. 5137 (C. S., sec. 9674), citing *Standard Live Stock Co. v. Bank of California* (Cal. App.), 227 Pac. 962.   The federal statute referred to provides that no national banking association shall hold possession of any real estate under mortgage, or the title and possession of any real estate purchased to secure any debt due to it, for a longer period than five years.   Neither the statute nor the decision have any bearing on this case, since intervenor acquired title to the land in April, 1922, and that same month leased it to respondent for a period of only one year.

The reasons stated above effectually dispose of the case, and make it unnecessary to enter upon a discussion of the many complicated questions of law discussed in the briefs as to whether the transactions covered by the evidence constituted doing business within this state and were therefore void because appellant, a foreign corporation, had not complied with our statutes.

The judgment is affirmed, with costs to respondents.

Dunn, William A. Lee and Wm. E. Lee, JJ., concur.